UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:      Alan Granader,               Case No. 11-43076
                                             Chapter 7
                  Debtor.         Honorable Marci B. McIvor
_____/

        Judith Grant,

                Appellant,

v.                            Case No. 15-12605
                                   Honorable Sean F. Cox

        Alan Granader,

                Appellee.
_____/

## OPINION & ORDER

This is a bankruptcy appeal from a Chapter 7 proceeding. Appellant Judith Grant's ("Grant") appeal relates to two orders of the Bankruptcy Court: (1) the Order Granting in Part and Denying in Part Creditor Judith Grant's Motion for Reconsideration of this Court's Order Denying Her Motion to Reopen; and (2) the Ordering Denying Grant's Motion to Reopen, entered in connection with the Bankruptcy Court's Supplemental Opinion Denying Creditor Judith Grant's Motion to Reopen Debtor's Case.

The Court finds that the facts and legal arguments are adequately presented in the briefs and record, and that the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr. P. 8019; Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the reasons set forth below, the Court shall AFFIRM the bankruptcy court's rulings.

**BACKGROUND**

The following background facts are primarily gleaned from the Bankruptcy Court's July 22, 2015, Supplemental Opinion Denying Judith Grant's Motion To Reopen Debtor's Case. (Bankr. Docket # 37, "Supp. Opinion"). Like the bankruptcy court, this Court believes "a little history is necessary" in order to put Grant's arguments in context.

I.      **Factual Background**

Judith Grant is Alan Granader's ("Debtor") ex-wife. (Supp. Opinion, at 1). On August 18, 2005, prior to the divorce, Debtor borrowed $350,000 from the Alan Granader Irrevocable Trust ("the Trust"). *Id.* Debtor signed a promissory note agreeing to repay the loan. *Id.*

Grant subsequently filed for divorce on May 26, 2006. *Id.* at 2. The Oakland County Circuit Court entered a Judgment of Divorce ("Divorce Judgment") on January 14, 2008. *Id.* The Divorce Judgment awarded Grant monthly payments of $21,531.

Two years later, on March 19, 2010, a Stipulated Order and Money Judgment entered in the divorce action determined that Debtor owed Grant a principal amount of $47,146. *Id.*

On April 26, 2010, pursuant to an agreement, Grant became the holder of the $350,000 promissory note originally issued by Debtor to the Trust. *Id.* It is undisputed that Debtor was not a party to the agreement. It is also undisputed that the Divorce Judgment makes no mention of the promissory note.

On February 8, 2011, Debtor filed a bankruptcy petition seeking relief under Chapter 7 of the Bankruptcy Code. *Id.* Debtor listed the $47,146 principal balance owed to Grant on his Schedule E (unsecured priority claims). *Id.* The $350,000 promissory note was disclosed on his

Schedule F (unsecured non-priority claims).  *Id.*  Debtor received a discharge on July 19, 2011. *Id.*  On August 26, 2011, Debtor's bankruptcy case was closed.  *Id.*

In April 2015, Grant filed the following pleadings in the divorce case: (1) a Motion for preliminary injunction against Rosellen Gliner (Debtor's current wife), Sylvia Granader (Debtor's mother), and the Sylvia Granader Trust; (2) a Motion to rescind and void the April 2010 agreement between Grant and Leonard Nagel, as trustee of the Trust; and (3) a Motion to hold Dan Granader in contempt.  *Id.* at 2-3.  Each of the above motions were withdrawn by Grant, without prejudice.

On April 28, 2015, Grant filed the following motion in Oakland County Circuit Court: Motion for Declaratory Ruling that [Debtor] is Personally Liable for Monthly Private Annuity Payments Under Judgment of Divorce.  *Id.* at 3.  Grant's Motion pertained to the $350,000 promissory note.

In May 2015, Grant filed the following three lawsuits in the Oakland County Circuit Court: (1) Complaint against Rosellen Gliner alleging receipt of fraudulent transfers (Case No. 15-146883-CZ)[1]; (2) Complaint against Sylvia Granader and the Sylvia Granader Trust alleging receipt of fraudulent transfers (Case No. 15-146882-CZ)[2]; and (3) Complaint against Leonard Nagel as trustee of the Trust, to set aside the 2010 settlement (Case No. 15-147390).[3]  *Id.* at 3.

On June 3, 2015, the Oakland County Circuit Court denied Grant's April 28, 2015

---

[1] Debtor contends that this case is still pending. Grant contends that she has attempted to dismiss the case without prejudice in order to preserve a trustee's right to pursue these charges if the bankruptcy case is reopened.  Grant contends that Debtor has opposed a dismissal without prejudice.

[2] Please refer to the footnote above.

[3] Debtor contends that Grant voluntarily dismissed this case without prejudice.

3

Motion. *Id.* at 4. The Court explained that it was bound by the terms of the Divorce Judgment. Thus, the Court concluded that, in the event the private annuity fails to provide Grant, the appropriate remedy would be for Grant to seek spousal support. *Id.* On June 8, 2015, the court issued a written order denying Grant's Motion. Pursuant to the court's Order, Debtor was required to pay $1,000 in attorneys fees and a money judgment in the amount of $52,038. Debtor provided Grant with two checks in the amounts of $52,038 and $1,000 on June 4, 2015. *Id.* Per the court's order, these payments released all liens and garnishments.

## II.      Procedural Background

On June 12, 2015, Grant filed an ex-parte Motion to Reopen Debtor's Chapter 7 Case in the United States Bankruptcy Court, Eastern District of Michigan. (Bankr. Docket # 22, Motion to Reopen). The action was assigned to the Honorable Marci B. McIvor, United States Bankruptcy Judge, and was assigned as Case No. 11-43076. Grant's motion to reopen sought to:

(1)      reappoint Chapter 7 trustee[4] to administer assets and recover fraudulent transfers made by Granader to his mother and/or her trust, and to his current wife;

(2)      file an adversary proceeding to determine the dischargeability of the $350,000 debt owed to Grant "as this debt relates back to a domestic support obligation arising under the divorce judgment"; and

(3)      refer Granader and his family to the United States Trustee/Department of Justice for investigation and prosecution of bankruptcy and tax fraud

(Motion to Reopen, at 3-5).

At a hearing on June 23, 2015, the Bankruptcy Court denied Grant's motion, concluding that Grant lacked standing. (Bankr. Docket # 34). The Court issued a written order denying Grant's motion to reopen on June 25, 2015. (Bankr. Docket #33).

---

[4] George Dakmak, the Trustee at the time of the bankruptcy, has since died.

4

**Grant's Motion for Reconsideration**

On July 9, 2015, Grant filed an "Ex-Parte Motion for Reconsideration Of [The] Order Denying Creditor Judith Grant's Motion To Reopen Case Pursuant to 11 U.S.C. § 350(b)." (Bankr. Docket #35, Motion for Reconsideration). In it, Grant advanced various arguments with respect to: (1) the status of the $350,000 debt; (2) her standing as a creditor; (3) a creditor's right to receive a distribution with regard recoverable undisclosed assets and transfers of money; and (4) the lapse in time with respect to reopening the case not constituting prejudice. *Id.*

**Bankruptcy Court's Opinion & Order on Grant's Motion To Reconsider & Supplemental Opinion Denying Grant's Motion to Reopen**

The bankruptcy court granted in part and denied in part Grant's Motion for Reconsideration. (Bankr. Docket #36). The court granted the Motion to the extent that it ruled that Grant did in fact have standing. However, the court, *sua sponte*, found alternative grounds for denying Grant's Motion to Reopen. The court laid out its alternative grounds for denial in a Supplemental Opinion Denying Grant's Motion to Reopen on July 22, 2015.

In its Supplemental Opinion, the bankruptcy court determined that: (1) reopening the case was not necessary for a determination of non-dischargeability; (2) reopening the case will provide no benefit to creditors that cannot be obtained in state court; and (3) a motion to reopen on the grounds of fraud upon the court is barred by the doctrine of laches. (Supp. Opinion at 7; 9; 10).

**Grant's Notice of Appeal**

On June 23, 2015, Grant filed a Notice of Appeal, appealing "from the final order of the United States Bankruptcy Court's Order Denying Grant's Motion to Reopen (docket no. 38) entered in this bankruptcy case on July 22, 2015." (Bankr. Docket #39).

5

**STANDARD OF REVIEW**

The standard of review that applies to a bankruptcy court's denial of a motion to reopen a debtor's case is as described in *In re Smith*, 470 B.R. 459, 461 (B.A.P. 6th Cir. 2012):

> A bankruptcy court's order denying a motion to reopen the debtor's bankruptcy case is a final and appealable order. The decision on a motion to reopen is committed to the sound discretion of the trial court and the reviewing court should not set aside the bankruptcy court's decision absent an abuse of discretion. Therefore, findings of fact are not set aside unless clearly erroneous and matters of law are reviewed de novo.

*Id.* (internal citations omitted).

**ANALYSIS**

I.     **Grant's Due Process Claim**

As an initial matter, Grant asserts that the bankruptcy court's Supplemental Opinion constituted a violation of her due process rights because she was not afforded the opportunity to respond to the alternative grounds for denial.  (Docket #6, Grant's App. Brief, at 12).  Grant argues that the court had no authority to find new and alternative grounds to deny Grant's Motion to Reopen.  Grant's assertion here is conclusory.  Grant does not identify which of the bankruptcy court's alternative grounds are at issue.  Additionally, Grant does not support her claim with any authority.

Debtor correctly points out that the bankruptcy court is not required to advise a party that it intends to apply applicable law.  (Docket #7, Debtor's App. Brief, at 29).  He additionally contends that the bankruptcy court may rule on a motion to reopen without a hearing.  Finally, Debtor asserts that Grant was aware of, and had an opportunity to address the timeliness issue since it was raised at the June 23, 2015 hearing.  In her Reply, Grant does not dispute the

6

arguments advanced by Debtor.  (Docket #9, Grant's Reply Brief).  The Reply appears to disregard the due process claim altogether.  Since Grant has not made an effort to develop her position in this regard, neither should the Court.

Moreover, the allegedly "new" grounds laid out by the bankruptcy court in its Supplemental Opinion appear to have been made as responses to the arguments advanced by Grant in her Motion for Reconsideration.  Since Grant is the one who laid the issues out for the bankruptcy court, Grant's own pleadings put her on notice of the possibility that the bankruptcy court would respond to the arguments laid out therein.

For these reasons, the Court shall disregard Grant's due process claim as it is under developed and without merit.

## II.     The Bankruptcy Court Did Not Abuse Its Discretion When It Denied Grant's Motion to Reopen

Grant brought her Motion to Reopen pursuant to 11 U.S.C. § 350(b), which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  The decision to reopen a closed case is a matter within the court's sound discretion.  *In re Wilson*, 511 B.R. 103, 105 (Bankr. E.D. Mich. 2014).  In making this determination, the court "'must strike a balance between the rights of the [the affected] creditors on the one hand and the policy of the fresh start afforded to Debtor by operation of Chapter 7 of the Bankruptcy Code.'"  *In re Tarkington*, 301 B.R. 502, 506 (Bankr. E.D. Tenn. 2003) (quoting *In re Fraiser*, 294 B.R. 362, 366 (Bankr. D. Colo. 2003)).

Since the statute does not define "cause" for reopening a closed case, such motions are to be decided by the court on a case by case basis, based upon the equities of each particular case.

7

*In re Tarkington*, 301 B.R. at 506.  Motions to reopen for cause "should be granted only where a compelling reason for reopening the case is demonstrated.'"  *In re Emery*, 428 B.R. 709, 711 (W.D. Mich. 2010) (quoting *Urbanco v. Urban Sys. Streetscape, Inc*., 111 B.R. 134, 135 (W.D. Mich. 1990) (internal quotations omitted)).  Accordingly, the court should not reopen a case if doing so would be futile.  *See Chanute Prod. Credit Assoc. v. Schicke*, 290 B.R. 792, 798 (10th Cir. BAP 2003) ("A bankruptcy court that refuses to reopen a Chapter 7 case that has been closed will not abuse its discretion if it cannot afford the moving party any relief in the reopened case.").

In asserting that the bankruptcy court abused its discretion by denying her Motion to Reopen, Grant advances the following arguments: (1) the Chapter 7 Trustee has a duty pursuant to 11 U.S.C. 704 to investigate the Debtor's financial affairs since the Trustee represents the interests of unsecured creditors; (2) the Chapter 7 Trustee has the exclusive right to bring a fraudulent conveyance action; (3) affirming the bankruptcy court's ruling would condone fraudulent activity by the Debtor; (4) the benefit to creditors of reopening the case far exceeds the burden placed on the court; (5) the doctrine of laches is inapplicable in the instant case; and (6) Grant has no ability to pursue a fraudulent conveyance action in state court.[5]  (Grant's App. Brief).

### A.    The Bankruptcy Court Properly Applied The Doctrine Of Laches

The bankruptcy court has advanced alternative and independent grounds for denial of Grant's motion.  Because the bankruptcy court's application of the doctrine of laches was reasonable, there is no need for the Court to spend time discussing the merits of the bankruptcy

---

[5] On appeal, Grant does not address the bankruptcy court's ruling as to the dischargeability of the $350,000 note.  Thus, Grant has waived her appeal as to this issue.  *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 544 n.8 (6th Cir. 2002) ("It is well established that an issue not raised in a party's briefs on appeal may be deemed waived.").

court's remaining grounds for denial. For the reasons below, the bankruptcy court's denial on the basis that Grant's motion is barred by the doctrine of laches is not an abuse of discretion. [6]

Although the Bankruptcy Code imposes no time limit on a motion to reopen, the time in which one is made must be reasonable. *See* F.R.B.P. 9024; Fed. R. Civ. P. 60(c)(1). "Notwithstanding this discretion, a case should not be reopened to relieve a party of the consequences of his own mistake or ignorance." *Virgin Islands Bureau of Revenue v. St. Croix Hotel Corp*., 60 B.R. 412, 414 (D.V.I. 1986) (internal citations and quotations omitted). When deciding whether to reopen a closed case, the length of time between the closing and the motion to reopen is an important consideration to the bankruptcy court, which also weighs the significance of the potential bankruptcy asset at issue, together with any prejudice to the debtor. *In re Plumlee*, 236 B.R. 606, 610 (E.D. Va. 1999).

Here, the bankruptcy court explained that although it takes very seriously any allegation of fraud on the court:

> in the context of a motion to reopen, the Court must also consider the importance of prompt and efficient administration of bankruptcy cases. In *Virgin Islands Bureau of Revenue v. St. Croix Hotel Corp*., 60 B.R. 412, 414 (D.V.I. 1986), the court discussed the importance of the prompt administration of a bankruptcy

---

[6] Debtor additionally argues that the bankruptcy court's decision was not an abuse of discretion because a reappointed trustee would be precluded from bringing any fraudulent conveyance action, since the statute of limitations set forth in §§ 546 and 549(d) have all passed. (Debtor's App. Brief, at 16-17). Grant replies that the statute of limitations for avoidance actions is tolled when a claim or asset is concealed: when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered... (Reply Brief, at 10) (quoting *Baily v. Glover*, 88 U.S. (21 Wall) 342, 348-51 (1875)). Per Grant's own pleadings, a finding of laches precludes the application of the doctrine of equitable tolling. Thus, the bankruptcy court has reasonably applied the doctrine of laches, it appears that a trustee would be precluded from bringing a conveyance action.

2:15-cv-12605-SFC-APP   Doc # 10   Filed 01/21/16   Pg 10 of 13   Pg ID 555

> estate: the consensus of authority holds that the most important consideration in deciding to reopen the case is the timeliness of the motion.
>
> . . . .
>
> At the heart of this view is the doctrine of laches, which not only applies in bankruptcy proceedings but is an important consideration because the chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period of time.

(Supp. Opinion, at 11) (internal citations and quotations omitted).

At oral argument, Grant's counsel stated that Grant had ineffective counsel during the duration of the bankruptcy case, which is why the alleged fraudulent transfers had not been discovered. (Bankr. Docket #34, at 8-9). In its Supplemental Opinion, the court pointed out that "Grant [did] not assert that the fraudulent transfers could not have been discovered during the bankruptcy case; she only asserts that she did not discover the fraudulent transfers until late in 2014." (Supp. Opinion, at 11). The court found this distinction significant because the fraudulent transfers alleged by Grant were discoverable in 2011. *Id.* The court noted:

> The Bankruptcy Code provides the Chapter 7 Trustee and creditors with remedies to investigate the accuracy of a debtors schedules and statement of financial affairs. 11 U.S.C. § 341 requires that debtors testify under oath as to their financial condition. Fed. R. Bankr. P. 2004 allows the Trustee and creditors to thoroughly investigate the financial condition of debtors.

*Id.* at 12, n. 2. The bankruptcy court found Grant's reason for waiting almost four years to file her Motion to Reopen insufficient to override the importance of prompt and efficient administration of bankruptcy cases:

> [i]n a case where the Trustee and unsecured creditors had every reason to ferret out undisclosed assets and fraudulent transfers while the case was open, an untimely argument about fraud is insufficient to outweigh the importance of prompt and efficient administration of this bankruptcy case.

*Id.*

10

On appeal, Grant argues that the duty to investigate the financial affairs of the debtor and the duty to administer assets belongs to the Chapter 7 Trustee, not the creditors.  (Grant's App. Brief, at 19).  Grant takes the position that as a creditor, she must rely on the trustee's due diligence and investigatory efforts.  *Id.*  Grant additionally takes issue with the court's "argument that many of the unsecured creditors were sophisticated and had every motive to find undisclosed assets."  *Id.* at 20.  Grant's argument here appears to misconstrue the bankruptcy court's opinion. The bankruptcy court does not attempt to shift the trustee's investigative duties on to creditors, but rather, it correctly points out that the Bankruptcy Code affords creditors various means by which to protect their interests.[7]  Thus, contrary to Grant's assertions, none of Debtor's unsecured creditors were so limited in that they must have relied *solely* on the investigative efforts of the trustee.

Grant additionally contends that, "'when the purpose of the motion to reopen is to add an undisclosed asset, the most important consideration is the benefit to the creditors.'"  *Id.* at 27 (quoting *In re Arana*, 456 B.R. 161, 173 (E.D. N.Y. 2011); *In re Upshur*, 317 B.R. 446, 450 (N.D. Ga. 2004)).  However, in advancing this argument, Grant ignores the distinction the bankruptcy court makes between "omitted assets" and "fraudulent transfer claims."  This is not a case where recovery is certain.  Rather, it is a case involving allegations of fraud.  There has been no determination by any court that fraudulent transfers indeed took place.  During the hearing on Grant's Motion to Reopen, Judge McIvor stressed the following:

---

[7] Grant argues that even if she had discovered the alleged fraudulent conveyances while the case was open, only a "Chapter 7Trustee has the exclusive right to bring a fraudulent conveyance action... during the pendency of the Debtor's bankruptcy case."  (App. Brief at 21). Again, Grant appears to misconstrue the Court's ruling and it disregards the rights and protections afforded to creditors under the Code.

> I want you to know that I looked at every single exhibit that was filed. There are
> no allegations... [t]he pleadings don't explicitly allege a failure. There's
> innuendo... there was nothing alleging anywhere close to the type of allegations to
> establish some sort of fraud on the court..."

(Bankr. Docket #34, at 15). Despite Judge McIvor's assertions, Grant maintains that reopening

the case will confer a benefit on creditors, and relies on the following cases to substantiate her

claims: *In re Arana*, *In re Upshur*, and *In re Dewberry*, 266 B.R. 916 (Bankr. S.D. Ga 2001).

The bankruptcy court correctly distinguished these cases in that they involved undisclosed pre-

petition claims and causes of actions belonging to the debtor, whereas here, "the allegedly

'omitted assets' are *not* assets of the debtor, but are, instead, fraudulent transfer claims." (Supp.

Opinion, at 10). Thus, the court's determination that recovery for Granader's creditors is

uncertain is reasonable.

Finally Grant argues that the mere passage of time is not sufficient enough reason for the

court to "overlook the blatant fraud before its eyes." (Grant's App. Brief, at 28). While it is true

that "passage of time alone does not necessarily constitute prejudice... sufficient to trigger a

laches bar," Grant appears to ignore the various factors implicit in the bankruptcy court's ruling.

*In re Tarkington*, 301 B.R. at 507 (internal citations and quotations omitted). Where, as here,

delay is combined with other factors, the passage of time may constitute prejudice. *In re

Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993). First, Grant has only *alleged* fraud. Second, the

bankruptcy court's decision to deny Grant's motion is not based solely on lapse of time. Rather,

the court considered the importance of prompt and efficient administration, it considered the

*reasons* for the delay, it considered the benefit, if any, afforded to the creditors, and it also

distinguished the present case from the only two cases it could find where a motion to reopen

was granted more than four years after the close of the case. In weighing all of this against the

12

benefit creditors may *potentially* realize on Grant's fraudulent conveyance claims, the bankruptcy court's decision to deny the motion is reasonable.

### CONCLUSION

For the reasons set forth above, IT IS ORDERED that the bankruptcy court's orders are AFFIRMED.

**IT IS SO ORDERED**.


S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  January 21, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 21, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

13